IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  05-cv-00178-WYD-BNB

U.S. COMMODITY FUTURES TRADING COMMISSION,

    Plaintiff,

v.

MATTHEW REED, *et al.*,

    Defendants.

_____

**ORDER**
_____

I.      INTRODUCTION

THIS MATTER is before the Court on Motion to Dismiss filed by Defendants Matthew Reed and Darrell Danlyuk on March 28, 2005 (docket #27) (the "motion")[1]. The motion seeks dismissal of the United States Commodities Futures Trading Commission's ("CFTC") Complaint, filed February 1, 2005, in which the CFTC brings claims against all Defendants for (1) knowing delivery of false or misleading or knowingly inaccurate information concerning natural gas transactions to industry reporting firm that calculated and reported the index price of natural gas, and (2)

---

[1] Defendants Shawn McLaughlin and Concord Energy LLC also filed a joint motion to dismiss on April 27, 2005 (docket #40).  The arguments raised in the two joint motions to dismiss are similar.  However, on March 13, 2007, Consent Orders of Permanent Injunction and Other Equitable Relief entered against Defendants Darrell Danyluk, Shawn McLaughlin, and Concord Energy LLC (docket #'s 123, 124, & 125).  I address the arguments in Danyluk and Reed's motion to dismiss <u>only</u> as they pertain to Defendant Matthew Reed.

attempted manipulation of natural gas price indices, in violation of sections 6(c), 6(d), and 9(a)(2) of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 9, 13b, and 13(a)(2). The natural gas transactions at issue involve actual physical delivery of natural gas. The Complaint does not allege that any of the Defendants were natural gas futures traders or that they entered into any futures or options contracts or made any statements about futures or options contracts.

A hearing was held on August 23, 2005. Following the hearing, the Court requested additional briefing regarding the CFTC's jurisdiction to bring the claims alleged in the Complaint. Both parties submitted supplemental briefing concerning the CFTC's jurisdiction on September 9, 2005. Defendants were granted leave to file a Response to the CFTC's supplemental brief on September 15, 2005. The CFCT filed a Notice of Supplemental Authority on March 3, 2006, and March 20, 2006. Defendants Danyluk, McLaughlin and Concord submitted supplemental authority on March 24, 2006. The Court has considered all of the authorities submitted and the responses thereto. For the reasons stated on record at the hearing and in this Order, the motion to dismiss is **DENIED**.

II.     ANALYSIS

    A.     Standard of Review

In reviewing a motion to dismiss, the court "'must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996), *cert. denied*, 522 S.Ct. 858 (1997) (quoting *Gagan v. Norton*, 35 F.3d 1473, 1474 n. 1

(10th Cir. 1994)). "A complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) only 'if the plaintiff can prove no set of facts to support a claim for relief.'" *Id.* (quoting *Jojola v. Chavez*, 54 F.3d 488, 490 (10th Cir. 1995)). A complaint must be dismissed if, accepting the allegations as true, it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Meade v. Grubbs*, 841 F.2d 1512, 1526 (10th Cir. 1988).

    B.    <u>Motions to Dismiss</u>

        1.    <u>Jurisdiction</u>

I first address Defendant Reed's argument that the claims asserted by the CFTC in this case must be dismissed because the CFTC's jurisdiction is limited to the regulation of futures contracts and does not encompass the cash market transactions described in the Complaint.

In 1922, Congress enacted the Grain Futures Act in order to regulate boards of trade on which futures trading occurred in an effort to combat price manipulation and excessive speculation. *Salmon Forex, Inc. v. Tauber*, 8 F.3d 966, 970 (4th Cir. 1993). The Grain Futures Act, which developed into the Commodity Exchange Act in 1936, required futures contracts dealing with certain commodities to be traded on government-approved public exchanges called "contract markets." *CFTC v. Baragosh*, 278 F.3d 319, 323 (4th Cir. 2002) (citing Commodity Exchange Act, Pub.L. No. 74-675, § 4, 49 Stat. 1491, 1492 (1936), *amending* Grain Futures Act, Pub.L. No. 67-331, § 4, 42 Stat. 998 (1922); 7 U.S.C. § 6(a)). In 1974 the CEA was amended to expand its jurisdiction from a statutory list of enumerated commodities to include all goods and

articles in which a futures contract is traded. *Baragosh*, 278 F.3d at 324. The 1974 amendments also created the CFTC and granted the commission broad power to enforce and oversee the CEA. *Id.*

As it exists today, the CEA is recognized as establishing "a comprehensive system for regulating futures contracts and options." *Salomon*, 8 F.3d at 970. Pursuant to § 2(a)(1)(A), the CFTC has exclusive jurisdiction over "contracts of sale of a commodity for future delivery."[2] *See* 7 U.S.C. § 2(a)(1)(A). While the CEA does not define the phrase "contracts of sale of a commodity for future delivery," it does state that the term "future delivery," does not include "any sale of any cash commodity for future shipment or delivery." 7 U.S.C. § 1a(19). Thus, the CFTC has exclusive jurisdiction over what are referred to as "futures contracts. " *CFTC v. Zelener*, 373 F.3d 861, 865 (7th Cir. 2004). The CFTC's exclusive jurisdiction does not extend to transactions involving the sale or physical delivery of the actual commodity, which are referred to as "cash forwards" or "spot" transactions. *Salomon*, 8 F.3d at 971; *Zelener*, 373 F.3d at 865.

Defendant contends that § 2(a)(1)(A) limits the jurisdiction of the CFTC to the regulation of futures contracts. Defendant maintains that he is not a "futures trader" and that the conduct alleged in the complaint concerns physical or actual trades of natural gas, not the sale of futures contracts for natural gas. Defs. Danyluk's and Reed's Joint Motion to Dismiss ("D&R") at 7.

---

[2] 7 U.S.C. § 2(a)(1)(A) states that the CFTC shall have <u>exclusive jurisdiction</u> . . . with respect to accounts, agreements . . . and transactions involving <u>contracts of sale of a commodity for future delivery</u> . . . .

In support of his position, Defendant points to several cases in which courts acknowledge the distinction between the CFTC's regulation of futures contracts, as opposed to cash market transactions.  *See Nagel v. ADM Investor Servs. Inc.*, 217 F.3d 436, 440 (7th Cir. 2000) ("[i]t is because commodity-futures contracts are a type of security that Congress has seen fit to subject them to a regulatory scheme, the Commodity Exchange Act . . ..  There was no intention of regulating the commerce in agricultural commodities itself."); *Grain Land Coop v. Kar Kim Farms, Inc.*, 199 F.3d 983, 990 (8th Cir. 1999) ("the legislative history of the CEA and its predecessors points to a congressional distinction between . . . commodities futures contracts and [cash market contracts] . . .."); *see also Salomon*, 8 F.3d at 970-73.  In addition, Defendant cites to statements made by James Newsome, Chairman of the CFTC, during testimony before the Subcommittee on Energy and Air Quality and the Committee on Energy and Commerce in the House of Representatives, in which he stated, "[t]he CFTC does not regulate trading of energy products on spot (cash) markets or forward markets, which are excluded from our jurisdiction by the CEA."  Defendant also points to the following statement contained in the CFTC's December 13, 2000 Final Order pertaining to the Commodity Futures Modernization Act:

> [T]he Commission does not require that cash markets . . . come within the regulatory framework. . . . The Act, and the regulatory framework thereunder, apply to markets that trade futures or option contracts on such underlying commodities.  According, there is no inconsistency between the Commission's regulation of futures markets and regulation of the underlying cash markets by other regulators . . . .  To the contrary, the Commission in its oversight of the futures and option markets coordinates and

> cooperates with the regulators of related underlying cash markets.

65 Fed. Reg. 77961, 77965-66 (Dec. 13, 2000).

The CFTC does not dispute that the transactions at issue in this case involve cash markets rather than futures contracts. The CFTC maintains, however, that Defendant misreads "§ 2(a)(1)(A) as conferring jurisdiction 'exclusively over futures contracts' rather than conferring 'exclusive jurisdiction over futures contracts.'" Pl.'s Opposition to Def's Motion to Dismiss at 5. The CFTC contends that the purpose of § 2(a)(1)(A) is not to limit the overall jurisdiction of the CFTC, but to make clear that the CFTC is the only regulatory body with jurisdiction over futures contracts. The CFTC asserts that in addition to jurisdiction over futures contracts, it also has jurisdiction over "certain conduct involving or affecting cash markets." The CFTC notes that pursuant to § 13(a)(2), the section of the CEA Defendant is alleged to have violated, the CFTC has broad authority to take action against individuals who manipulate or attempt to manipulate the market price of "any commodity in interstate commerce or for future delivery." 7 U.S.C. § 13(a)(2). It is the CFTC's position that § 13(a)(2), consistent with § 2(a)(1)(A), grants the CFTC jurisdiction over both futures contracts <u>and</u> over certain conduct involving or affecting cash markets.

When construing statutes, my primary task is to determine congressional intent using traditional tools of statutory interpretation. *McGraw v. Barnhart*, 450 F.3d 493, 498 (10th Cir. 2006). The starting point is always the language of the statute itself. *McGraw*, 450 F.3d at 498. If the language of the statute is clear and unambiguous, the

plain meaning of the statute controls.  *Id.*

As an initial matter, I agree with the CFTC that the statements of Chairman Newsome are not dispositive of the legal issues before the Court.[3]  *See United States v. Valencia*, 2003 WL 23174749 at *22, n. 48 (S.D. Texas, Aug. 25, 2003) (*revs'd in part on other grounds*).  Moreover, portions of the CFTC's December 13, 2000, Order cited by Defendant supports the CFTC's arguments in this case.[4]  In any event, I find that the plain language of the statute at issue is clear and unambiguous and, therefore, I need not consider evidence of legislative intent.  Here, the CFTC alleges that Defendant attempted to manipulate the price of natural gas, a commodity that travels in interstate commerce, and delivered false natural gas trade reports.  Complaint at ¶¶ 28, 59 and 70.  Such conduct, if proven, clearly violates § 13(a), which prohibits manipulation or attempted manipulation of the price of "any commodity in interstate commerce, or for future delivery."  I agree with the CFTC that § 2(a)(1)(A), while granting the CFTC with exclusive jurisdiction to regulate transactions involving the futures market, does not limit the CFTC's broad authority to regulate price manipulation of *any* commodity in interstate commerce, as set forth in § 13(a).

In their supplemental briefing, Defendants contend that the CFTC must at least

---

[3] For this reason, the Court has not considered Defendants' additional supplemental authority including the transcript of an interview CFTC Chairman Ruben Jeffery gave to CNBC on October 14, 2005, as well as an article in the Wall Street Journal published on October 15, 2005 (docket #76).

[4] CFCT's December 13, 2000, Order states: ". . . it must be noted that sections 6(c) and (9)(a)(2) of the Act prohibit manipulation of 'the market price of any commodity, in interstate commerce' and is not limited in application to 'contracts of sale of a commodity for future delivery.'" *See* 65 Fed. Reg. 77961, 77964 (Dec. 13, 2000).

allege a nexus between the alleged cash market manipulation and the futures market. However, the CFTC has alleged in this case that if Defendant Reed's attempted manipulation of the natural gas price indices had occurred it "could have affected the price of natural gas futures and options contracts traded on the NYMEX." Complaint at ¶¶ 59 and 70. Moreover, nothing in the plain language of § 13(a) limits that section to "contracts of sale of a commodity for future delivery." *See United States v. Reliant Energy Servs.*, 420 F.Supp. 2d 1043, 1062 (N. D. Cal. 2006) ("the criminal manipulation provision of § 9(a)(2) is not limited to futures contracts"). I find that the CFTC has jurisdiction over the conduct described in the Complaint. *See CFTC v. Atha*, 420 F.Supp. 2d 1373, 1380 (N.D. Ga. 2006) (allegations that defendants falsely reported the price and volume of its forwards contracts in natural gas so as to influence the price of natural gas and thereby the price of futures contracts on NYMEX was within the scope of the CEA's jurisdiction).

### 2. Applicability of Exemptions

Next, Defendant asserts that the Complaint should be dismissed because natural gas is an "exempt commodity" under the CFTC's 1993 Final Order Regarding the Exemption for Certain Contracts Involving Energy Products ("1993 Exemption Order"), and 7 U.S.C. §§ 2(g) and 2(h). D&R at 8. The 1993 Exemption Order states in relevant part that:

> [t]he Commission . . . hereby exempts from all provisions of the Commodity Exchange Act . . . except Sections 2(a)(1)(B) of the Act and provisions of Section 6(c), 6c, 6(d) and 9(a)(2) of the Act, to the extent that these provisions prohibit manipulation of the market place of any commodity in

>> interstate commerce or for future delivery . . . <u>Contracts</u> for
>> the purchase and sale of crude oil, condensates, natural
>> gas, natural gas liquids . . ..

58 F.R. 21286-02, 21294 (1993) (emphasis added).  Defendant acknowledges the Order indicates that 9(a)(2)'s prohibition would still prohibit manipulation of a market, but assert that the Complaint does not alleges actual manipulation, but only <u>attempted</u> manipulation within the natural gas industry.  Defendant further asserts that 7 U.S.C. §§ 2(g) and 2(h) reaffirm that the CEA does not apply to off-exchange cash transactions involving natural gas.  D&R at 10.

Pursuant to § 2(g), the CEA shall not:

> apply to or govern any <u>agreement, contract, or transaction</u> in a commodity other than an agricultural commodity if the <u>agreement, contract, or transaction</u> is -
>
> (1) entered into only between persons that are eligible contract participants at the time they enter into the agreement, contract, or transaction;
>
> (2) subject to individual negotiation by the parties; and
>
> (3) not executed or traded on a trading facility.

7 U.S.C. § 2(g) (emphasis added).  Section 2(h)(1) provides that "nothing in this chapter shall apply to a <u>contract, agreement, or transaction</u> in an exempt commodity." 7 U.S.C. § 2(h)(1) (emphasis added).  7 U.S.C. § 1a defines an "exempt commodity" as "a commodity that is not an excluded commodity or an agricultural commodity."  Natural gas is an exempt commodity under this definition.  7 U.S.C. § 1a(14).

According to Defendant, the effect of the 1993 Exemption Order, and §§ 2(g) and (h) is to "exempt" persons entering into natural gas transactions, including the cash

market contracts involved in this case, from compliance with the CEA except for those CEA provisions relating to market manipulation. D&R at 13; *see also Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465 (1997) (discussing CEA's exemption for transactions in foreign currency pursuant to 7 U.S.C. § 2(ii)). In response, the CFTC contends that neither the 1993 Final Order, nor §§ 2(g) and 2(h) exempts or excludes from the Commission's jurisdiction the activities and conduct relating to false reporting or attempted manipulation of natural gas prices, which is the conduct at issue in this case. Sections 2(g) and (h) expressly removes only certain natural gas <u>agreements</u>, <u>contracts</u> and <u>transactions</u> from Commission oversight. Similarly, the 1993 Energy Exemption applies only to "[c]ontracts for the purchase and sale" of natural gas.

Defendant bears the burden of demonstrating that he is entitled to the exemptions set forth in §§ 2(g) and 2(h). *CFTC v. Bradley*, 408 F.Supp. 2d 1214, 1219 (N.D. Okla. 2005) (quoting *FTC v. Morton Salt*, 334 U.S. 37, 44-45 (1948)). By their terms, the exemptions are limited to contracts, agreements, or transactions. "Each of these terms [contracts, agreements and transactions], as commonly understood, denotes a mutual understanding between parties creating rights or obligations that are enforceable or are recognized at law." *Bradley*, 408 F.Supp. 2d at 1219. The illegal activity alleged in the Complaint - false reporting of market information concerning natural gas and attempted manipulation of natural gas price indices - does not implicate an "agreement, contract or transaction." *See United States v. Valencia*, 2003 WL 23174749 at *9 (S.D. Tex. 2003) (*revs'd in part on other grounds*) (finding that the

-10-

exemption under § 2(h) is confined to "contracts in exempt commodities"). I agree with the CFTC that Defendant's reporting activities are outside the scope of the exemptions set forth in §§ 2(g) and 2(h) and the 1993 Exemption Order. *Bradley*, 408 F.Supp. 2d at 1219; *CFTC v. Atha*, 420 F.Supp. 2d 1373, 1379-80 (N.D. Ga. 2006) (finding that defendants' alleged false reporting outside the scope of the 1993 Exemption Order).

### 3.   Constitutionality of 7 U.S.C. § 13(a)(2)

Defendant next alleges that 7 U.S.C. § 13(a)(2) is unconstitutionally overbroad and void for vagueness. D&R at 14. As discussed above, § 13(a)(2) makes it unlawful for:

> Any person . . . <u>knowingly</u> to deliver or cause to be delivered for transmission through the mails or interstate commerce by telegraph, telephone, wireless, or other means of communication <u>false or misleading</u> or <u>knowingly inaccurate</u> reports concerning crop or market information or conditions that affect or tend to affect the price of any commodity in interstate commerce . . . .

7 U.S.C. § 13(a)(2) (emphasis added).

#### a.   Overbreath

Defendant asserts that the statute is overbroad because the phrase "knowingly" modifies the words "deliver" and "inaccurate" but does not modify the words "false" and "misleading." According to Defendant, the statute criminalizes the knowing delivery of a report, even if the person who delivered the report did not <u>know</u> that the report was false or misleading. In response, the CFTC asserts that I should presume the existence of a scienter, and interpret the statute such that the word "knowingly" is read to modify the words "false" and "misleading." In support of this assertion, the CFTC

relies on the Fifth Circuit's decision in *United States v. Valencia*, 394 F.3d 352 (5th Cir. 2004). In *Valencia* the Court found that § 13(a)(2) must be read "to contain an adequate *mens rea* to avoid constitutional infirmity." *Valencia*, 394 F.3d at 255-56. The Court's reasoning in *Valencia* is based on *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994) (Scalia, J., dissenting), a case in which the United States Supreme Court, addressing a similar statutory construction problem, found that the existence of a scienter should be presumed in order to avoid a reading of the statute that would criminalize otherwise innocent conduct. *Id.* While § 13(a)(2) was applied in a criminal context in *Valencia*, I am persuaded by the reasoning in that case and in *X-Citement Video* (which also involved a criminal statute). Therefore, I find that the word "knowingly" contained in § 13(a)(2) must be read to modify the word "false" and the word "misleading."

Defendant nevertheless asserts that even if the statute is interpreted to prohibit only "knowingly" false and misleading reports, it is still overbroad in that it criminalizes "any communication of any known false or misleading information that may 'affect or tend to affect the price of any commodity. . . ,'" regardless of whether the speaker intended to affect commodity prices. D&R at 17. The CFTC responds that the statute's prohibition against the knowing dissemination of knowingly false or misleading information into interstate commerce is not overbroad because it does not criminalize otherwise innocent conduct. I agree with the CFTC and note that, knowingly false statements "do not enjoy constitutional protection." *Garrison v. Louisiana*, 379 U.S. 64, 74-76 (1964); *see also Illinois ex. re. Madigan v. Telemarketing Assoc.*, 538 U.S. 600,

617 (2003).

### b. Void for Vagueness

I also reject Defendant's assertion that the statute is void for vagueness. D&R at 17. Generally, the "void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *U.S. v. Platte*, 401 F.3d 1176, 1189 (10th Cir. 2005) (quoting *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)).[5]

Defendant contends that the plain language of § 13(a)(2) does not provide an ordinary person with notice or warning that it applies to statements regarding natural gas cash market transactions. Defendant also complains that the statute fails to define certain terms such as "any person," "report," "manipulate," "market information," and "false or misleading." D&R at 18.

Defendant's argument is premised on his assertion that the CFTC's jurisdiction is limited to futures contracts, and that "natural gas" is specifically exempted from the CEA. I have already rejected these arguments. As discussed above, the CFTC has jurisdiction to regulate the conduct at issue in this case. In addition, I find that the

---

[5] "In a civil context, where the enactment does not implicate constitutional rights, a court should find a statute unconstitutionally vague only if 'the enactment is impermissibly vague in all of its applications.'" *Jane L. v. Bangerter*, 61 F.3d 1493, 1500 (10th Cir. 1995), *rev'd on other grounds sub nom.*, 518 U.S. 137 (1996) (citing *Hoffman Estates v. Flipside*, 455 U.S. 489, 498 (1982) (a law that does not reach constitutionally protected conduct may be challenged on its face as unduly vague if the law is impermissibly vague in all of its applications).

terms "any person," "manipulate," and "false or misleading," while not defined in the CEA, are terms that are commonly understood in the English language. *See United States v. Valencia*, 2003 WL 23174749 *11 (S.D. Tex. 2003) (*revs'd in part on other grounds*) (the terms "false" and "misleading" have ascertainable meanings appreciated by ordinary people and are used in many criminal statutes."). I also find that the term "market information" is not vague because it is "expressly limited by the requirement that the information affect (or tend to affect) the price of a commodity in interstate commerce." *Id.* at *12. Finally, I reject Defendant's argument that the term "report" is vague and should be interpreted to refer to "a document submitted by a market participant to the government for purposes of regulatory oversight," and not to include verbal transmissions of allegedly false information to a private party. As discussed above, in the context of § 13(a)(2), the word "report" clearly encompasses the conduct at issue.

In conclusion, I find that § 13(a)(2) defines the prohibited conduct with "sufficient definiteness that ordinary people can understand what conduct is prohibited," and, therefore, the statute is not unconstitutionally vague.[6]

    4.    Rule 9(b)

Finally, Defendant asserts that because the CFTC has failed to plead fraud with particularity the Complaint should be dismissed or, alternatively, the CFTC should be

---

[6] I have not addressed the CFTC's assertion that Defendant's vagueness argument should be analyzed under the standard applied to "quasi-criminal" or "civil" statues because I find that Defendant's vagueness challenge fails even under the more rigorous standard applied to criminal statutes.

ordered to provide a more definite statement. D&R at 24. Defendant maintains that the Complaint does not allege what specific transactions were purportedly fraudulent, who was defrauded, and how the alleged fraud relates to the relief requested. The CFTC responds that Rule 9(b) does not apply because the Complaint alleges "numerous acts of false reporting and attempted manipulation" not "fraud." The CFTC claims that "fraud" is not an element of false reporting or attempted manipulation. The CFTC also argues that even if Rule 9(b) applies, the Complaint sufficiently alleges the general time frame and content of the false reports, the parties submitting them, and describes the consequences of such submissions.

Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud. . ., the circumstances constituting fraud. . . shall be stated with particularity." The requirements of Rule 9(b) must be read in conjunction with the principles of Rule 8, which calls for pleadings to be 'simple, concise and direct . . . and to be construed as to do 'substantial justice.'" "The purpose of Rule 9(b) is 'to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based. . . .'" *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (quotations omitted). "Simply stated, a complaint must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Schwartz*, 124 F.3d at 1252 (quotation omitted).

It is not clear whether Rule 9(b) applies to the manipulation claims alleged in this case. *Compare CFTC v. Enron Corp.*, 2004 WL 594752 at *3 (S.D. Tex., Mar. 10, 2004) (claims brought under § 13(a)(2) need not comply with Rule 9(b)); *In re Natural*

*Gas Commodity Litigation*, 358 F.Supp. 2d 336 (applying Rule 9(b) to manipulation claims under the CEA); *Bradley*, 408 F.Supp. 2d at 1222-23 (same). However, even assuming the requirements of Rule 9(b) do apply, I find that allegations in the Complaint are alleged with sufficient particularity. The Complaint alleges that from at least May 2000 until approximately the summer of 2002, Defendant Reed provided market information concerning natural gas physical trades to various reporting firms "in an attempt to manipulate the price of natural gas." Complaint at ¶¶ 2, 4, 5, 6, 9-12, 31, 45-47. The Complaint specifically identifies the nature of Defendant Reed's alleged scheme, and identifies specific telephone conversations between all Defendants in which they allegedly discuss the false reporting scheme. Complaint at ¶¶ 48-65. I find these allegations meet the standard set forth in Rule 9(b). *See Bradley*, 408 F.Supp. 2d at 1223 (allegations of that defendant disseminated false, misleading, or knowingly inaccurate information to reporting firms within a specified time frame sufficient under Rule 9(b)); *Natural Gas Commodity Litigation*, 358 F.Supp. 2d at 344 (same).

III. CONCLUSION

Based upon the foregoing, it is

ORDERED that the Motion to Dismiss filed by Defendants Darrell Danyluk and Matthew Reed on March 28, 2005 (docket #27), is **DENIED**.

Dated: March 27, 2007

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge

-16-